NBC SUBSIDIARY (KCNC–TV), INC., Plaintiff,

v.

BROADCAST INFORMATION SERVICES, INC., Defendant.

Civ. A. No. 88–A–325.

United States District Court, District of Colorado.

Dec. 21, 1988.

**1450**

Glenn K. Beaton, Jeffrey A. Chase, Holme Roberts & Owen, Englewood, Colo., for plaintiff.

Ralph F. Crandell, Holland & Hart, Ralph J. Koransky, Harold R. Bruno, III, Hopper, Kanouff, Smith, Peryam & Terry, Denver, Colo., for defendant.

## MEMORANDUM OPINION AND ORDER

ARRAJ, District Judge.

This matter is before the court on defendant's motion for partial summary judgment on plaintiff's claim under 17 U.S.C. § 411(b) and on plaintiff's claim under 17 U.S.C. § 411(a) to the extent plaintiff seeks statutory damages and attorney's fees. The parties have submitted briefs and supporting documentation in support of their positions. Oral argument was heard on December 15, 1988.

## BACKGROUND

Plaintiff NBC Subsidiary (KCNC–TV), Inc. ("KCNC") produces numerous programs including news telecasts. KCNC has a division, Aircheck 4, which videotapes KCNC television productions and provides copies to members of the public upon their request.

On February 17, 1988, KCNC aired a segment entitled "Wednesday's Child" as a part of its news broadcast. A private investigator, hired by KCNC, purchased a videotape copy of the segment on or about February 22, 1988 from defendant Broadcast Information Services, Inc. ("BIS"). Subsequently, on March 2, 1988 KCNC filed this action seeking relief, in claim one, for copyright infringement. On April 11, 1988 plaintiff's application for registration of the "Wednesday's Child" segment was received by the United States Copyright Office.

It is undisputed that the videotape copy sold by defendant to the plaintiff contained a live on-the-air lead-in by an anchorman and a prerecorded segment describing Wednesday's children.

## I) PUBLICATION:

Plaintiff states that regardless of whether 17 U.S.C. § 411(b) applies [1] in this case, that it is entitled to statutory damages and attorney's fees as provided in 17 U.S.C. § 412.[2] It is argued by plaintiff that its work was published, defendant's infringement commenced prior to registration, and that the work was registered within three months after publication. Plaintiff concludes that it is entitled to extraordinary damages under § 412(2). I disagree.

---

1. According to 17 U.S.C. § 412 one situation in which attorney's fees and statutory damages are available is where an action is initiated under § 411(b).

2. Section 412 provides: In any action under this title, other than an action instituted under section 411(b), no award of statutory damages or of attorney's fees, as provided by sections 504 and 505, shall be made for—

(1) any infringement of copyright in an unpublished work commenced before the effective date of its registration; or
(2) any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work.

■ The key issue is whether "Wednesday's Child" was published. As noted in *Pacific and Southern Company v. Duncan*, 572 F.Supp. 1186, 1197 (N.D.Ga.1983), *modified* 744 F.2d 1490 (11th Cir.1984), according to the Copyright Act, a transmission is not a publication. Plaintiff, in the instant case, tries to distinguish itself from the plaintiff in *Duncan* by arguing that it "continuously offers videotapes to the public including the 'Wednesday's Child' segment, "Brief in Opposition to Defendant's Request for Partial Summary Judgment, at 4, and that its Aircheck 4 division is in business for the sole purpose of providing these offerings, whereas, in *Duncan* the plaintiff received infrequent requests for copies. KCNC would have this court believe that its "extensive and systematic public offerings" amount to publication.

Plaintiff's argument fails because, plaintiff has not provided specific facts that would, if proven at trial, establish that "Wednesday's Child" was published.[3] I conclude as a matter of law that "Wednesday's Child" was not published.

■ Before addressing the substance of plaintiff's argument, I shall discuss a pertinent evidentiary issue. The record contains a copy of plaintiff's certificate of copyright registration for "Wednesday's Child" which is signed by plaintiff's attorney. The certificate includes a section which allows an applicant to specify the date and nation of first publication if the work has been published. This section has been left blank, indicating that the work was not published. "In any judicial proceedings the certificate of registration made before or within five years of first publication of the work shall constitute prima facie evidence of the validity of the copyright and of the facts stated in the certificate." 17 U.S.C. § 410(c).

I note that defendant, in an attempt to plug another hole in its publication argu-ment, has, without leave of the court, filed on December 20, 1988 at 4:50 P.M. a brief to supplement its Brief in Opposition to Defendant's Request for Partial Summary Judgment. Attached, thereto, is a copy of an "Application for Supplementary Copyright Registration" completed by the plaintiff on December 20, 1988 in which plaintiff purports to correct the omission of the date of first publication. Plaintiff's eleventh hour effort is unappreciated and unavailing. First, I have no basis upon which to conclude that this form has been received by the Copyright Office. Second, upon receipt, the Copyright Office will, according to Form CA, issue a certificate of Supplementary Registration which will *not* have the effect of expunging or cancelling the previous registration. Plaintiff's Supplement to Brief in Opposition to Defendant's Request For Partial Summary Judgment, Exhibit A (Application for Supplementary Copyright Registration, Form CA). "The supplementary registration will have the effect of calling the public's attention to a *possible* error or omission in the basic registration." *Id.* (emphasis added). Consequently, the prima facie effect of the registration as it relates to the issue of publication will be neutralized because it will contain conflicting statements of facts. Finally, and most importantly, as I shall address below, plaintiff has failed to provide evidence or even assert that it has offered "Wednesday's Child" to persons for the purpose of further distribution, public performance, or public display. This is fatal to KCNC's contention that the work was published.

■ Plaintiff's substantive argument hinges on the statutory definition of "publication."

"Publication" is the distribution of copies or phonorecords of a work to the public by sale or other transfer of ownership, or by rental, lease, or lending. The offer-

---

**3.** Plaintiff, in order to overcome defendant's motion for partial summary judgment based on this publication issue, must offer some competent evidence that could be presented at trial showing that there is a genuine issue of material fact. 10A C. Wright, A. Miller & M. Kane,

*Federal Practice and Procedure* § 2727 at 143 (2d ed. 1983). Conclusory statements are not enough. *R–G Denver v. First City Holdings of Colorado, Inc.*, 789 F.2d 1469, 1471 (10 Cir. 1986).

ing to distribute copies or phonorecords to a group of persons for the purposes of further distribution, public performance, or public display, constitutes publication....

17 U.S.C. § 101. The conclusory assertion that plaintiff has extensively offered[4] "Wednesday's Child" for public sale is refuted by the deposition testimony of Roger Ogden, KCNC's general manager, and Jean Cameron, administrator of plaintiff's G.E. Video Production Center. Both stated, in regard to the usual operating procedure of Aircheck 4, that the client always initiates contact. Deposition of Roger Ogden at 28:17–19; Deposition of Jean Cameron at 13:18–20. Furthermore, Cameron admitted that she was not aware of any instances in which KCNC had solicited clients for its Aircheck 4 product. Id. at 14:2–4. Plaintiff has provided absolutely no factual support for the proposition that it has offered to sell video copies of "Wednesday's Child" or any other KCNC programming to anyone.

A second flaw in plaintiff's "publication" argument appears upon further consideration of the statutory definition. The statute provides that publication may occur by distributing copies of a work to the public or by offering to distribute copies. The offering, however, must be made to "a group of persons *for the purposes of further distribution, public performance, or public display*...." 17 U.S.C. § 101 (emphasis added). Plaintiff's brief in opposition conveniently stops quoting the statute where my emphasis, above, begins, suggesting that the offering need be made simply to a group of persons. Certainly, Congress would have shortened the definition to plaintiff's version, had it not intended to qualify the definition by requiring that the offering be made for one or more of the specific purposes provided.

Professor Nimmer suggests that Congress probably intended that an offering to individual members of the public, for their own use, would constitute publication. "If an offering for indirect public distribution,

etc. constitutes publication, it can hardly be doubted that Congress intended as well that a public offering of direct distribution would likewise constitute publication." 1 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 4.04 at 4–20 (1988). If Congress had intended this result, it could have written the statute to read as plaintiff has quoted it in its brief. I find no rare or exceptional circumstances that would lead me to interpret this statute in a fashion other than according to its clear and unambiguous meaning. *See Wilson v. Stocker*, 819 F.2d 943, 948 (10th Cir.1987).

The legislative history makes it clear that Congress intended to require that in order for an offering to distribute copies to be considered a publishing that it must be made to persons for one or more of the listed purposes. "[T]he definition ... makes clear that, when copies or phonorecords are offered to a group of wholesalers, broadcasters, motion picture theaters, etc., publication takes place if the purpose is 'further distribution, public performance, or public display.'" H.R.Rep. No. 1476, 94th Cong., 2d Sess. 138, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5754.

Plaintiff has not provided any evidence that indicates that copies of "Wednesday's Child" were offered to any group of persons for the purposes of further distribution, public performance, or public display. Because KCNC has not provided any competent evidence that could be presented at trial to show that there are any genuine issues of fact regarding publication, plaintiff has not overcome its burden and summary judgment against plaintiff on its claim for statutory damages and attorney's fees should be granted unless these extraordinary remedies are available to KCNC under some provision other than § 412(2).

## II) APPLICABILITY OF § 411(B)

This leads me to plaintiff's second argument in support of its claim for extraordinary damages-compliance with

---

**4.** Plaintiff does not argue that it has distributed copies of the work to the public.

§ 411(b).[5] Statutory damages and attorney's fees are available in any action instituted under § 411(b). Previously, in my opinion filed on October 12, 1988, I denied plaintiff's motion for summary judgment on its first claim for copyright infringement because at that time I found that there was an unresolved issue of material fact regarding the applicability of § 411(b).[6] The record contained no evidence that might have established whether "Wednesday's Child" had been simultaneously fixed and recorded. Thus, it was not possible for me to determine whether § 411(b) applied.

After I denied plaintiff's motion for summary judgment, KCNC filed a motion to reconsider on November 1, 1988. Attached to its motion were videotape copies of plaintiff's work and the alleged infringing work sold by defendant. Plaintiff contends and defendant does not refute that both copies contain a live on-the-air lead-in by an anchorman and a prerecorded segment describing the Wednesday's children. Upon this record, plaintiff argues that § 411(b) applies and that defendant's motion for partial summary judgment on the issues of statutory damages and attorney's fees should, therefore, be denied. I disagree with plaintiff. Because I conclude that "Wednesdays Child" was pretaped, § 411(b) does not apply.

Plaintiff argues that the videotape is a single work, first fixed simultaneous with its transmission, or alternatively, that the live lead-in is a separate work that is simultaneously fixed and transmitted. In KCNC's first argument, it tries to bootstrap the "Wednesday's Child" segment into a live performance by claiming that the lead-in somehow turns a pretaped segment into a live one. This same argument

was rejected by the district court in *Duncan, supra.* The *Duncan* case involved a pretaped "Fitness Trail" feature preceded by a live introduction. *Duncan,* 572 F.Supp. at 1190. The court, in dicta, stated that the "fixation of the pretaped fitness trail feature did not first occur at the time of transmission." *Id.* at 1198. In the present case, as in *Duncan,* the copyrighted work was a pretaped segment. The live lead-in does not change this fact.

To allow plaintiff to bootstrap the pretaped segment into a live performance, and thus, allow extraordinary damages in this case, would be contrary to Congress' intent. Extraordinary damages are Congress' means of inducing "authors to register their works for copyright and thus make them available to the public at large by making the remed[ies] of attorney's fees [and statutory damages] available to one who has published and registered for copyright and, on the other hand, denying [them] to one who has not." *Harper & Row, Publishers v. Nation Enterprises,* 557 F.Supp. 1067, 1073 (S.D.N.Y.1983), *aff'd,* 779 F.2d 35 (2d Cir.1985). KCNC could have registered its copyright for the pretaped segment before it transmitted the news broadcast in which it was included. By doing so, extraordinary damages would have been available against any defendant who commenced infringement of the work after the effective date of registration. § 412(1). By following this procedure, plaintiff would have received Congress' intended reward of extraordinary damages. By failing to do so, KCNC has lost its opportunity. It would be contrary to Congress' intent to hold otherwise. Plaintiff should not be allowed to circumvent the reward system established by Congress by

**5.** 17 U.S.C. § 411(b) provides in full: In the case of a work consisting of sounds, images, or both, the first fixation of which is made simultaneously with its transmission, the copyright owner may, either before or after such fixation takes place, institute an action for infringement under section 501, fully subject to the remedies provided by sections 502 through 506 and sections 509 and 510, if, in accordance with requirements that the Register of Copyrights shall prescribe by regulation, the copyright owner—

(1) serves notice upon the infringer, not less than ten or more than thirty days before such fixation, identifying the work and the specific time and source of its first transmission, and declaring an intention to secure copyright in the work; and

(2) makes registration for the work within three months after its first transmission.

**6.** KCNC subsequently amended its complaint to assert that it had complied with §§ 411(a) and (b).

employing an overly technical application of the statute.

The same rationale applies to plaintiff's contention that the live lead-in is a separate work that was simultaneously fixed and transmitted. Acceptance of this argument would reward plaintiff under circumstances in which Congress did not intend. The copyrighted work in this case was "Wednesday's Child," [7] not the live lead-in. As I have previously stated, "Wednesday's Child" was pretaped. Therefore, § 411(b) does not apply.

## CONCLUSION

Plaintiff has failed to produce competent evidence that could be presented at trial to show that there is a genuine issue of fact regarding the issue of whether "Wednesday's Child" was "published." Furthermore, I hold that as a matter of law "Wednesdays Child" was prerecorded. I conclude that it follows that according to § 412, statutory damages and attorney's fees are not available to KCNC. Plaintiff may still be entitled to other remedies ordinarily available in infringement cases: injunctive relief and actual damages plus any applicable profits not used as a measure of damages.

Accordingly,

IT IS ORDERED that defendant's motion for partial summary judgment on plaintiff's § 411(b) claim be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that defendant's motion for partial summary judgment on plaintiff's § 411(a) claim, to the extent plaintiff seeks statutory damages and attorney's fees be, and the same hereby is, GRANTED.

---

**7.** Plaintiff's certificate of registration purports that "Wednesday's Child" is the work that was copyrighted.